IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FOROUZAN GOODARZI,                    §
                                      §
                Plaintiff,            §
                                      §
VS.                                   §   CIVIL ACTION H-12-2870
                                      §
BOBBY HARTZOG; RENEE PRIGGETT;        §
JAMES FRANKLIN; MARIA RINCON;         §
BARBARA MARTIN-SCHULTZ; KIMBERLY§
KYLE; NANCY VITALE; HPD POLICE        §
OFFICER R. GONZALEZ; EMPLOYEE         §
NO. 119678; MEMORIAL HERMANN          §
HOSPITAL SYSTEM; HOUSTON BAPTIST§
UNIVERSITY; AND JOHN DOES 1-10,       §
                                      §
                Defendants.           §

## OPINION AND ORDER

Pending before the Court in the above referenced civil rights
action, grounded in 42 U.S.C. 1983 and Plaintiff Forouzan
Goodarzi's ("Goodarzi's") Fourth Amendment right to be free from
unlawful seizure and her Fifth and Fourteenth Amendment right to
due process, along with claims for state common-law false arrest
and negligent failure by Defendant Memorial Hermann Health System
(f/k/a Memorial Hermann Hospital System)("Memorial Hermann") to
train or supervise its employees, are (1) the Memorial Hermann
Defendants'[1] motion to dismiss Plaintiff's First Amended Complaint

---

[1] The Memorial Hermann Defendants are the Memorial Hermann
Health System ("Memorial Hermann"), Bobby Hartzog ("Hartzog"),
Renee Priggett ("Priggett"), James Franklin ("Franklin"), Maria
Rincon ("Rincon"), Barbara Martin-Schultz ("Martin-Schultz"),
Kimberly Kyle ("Kyle"), and Nancy Dunn (f/k/a Nancy Vitale)

(instrument #34) and Defendant Officer R. Gonzalez's motion for summary judgment (#37).

In its lengthy Opinion and Order of June 14, 2013 (#31), which the Court now incorporates into this document, the Court dismissed all of the claims of 's Original Complaint. Specifically the Court dismissed with prejudice as a matter of law (1) Plaintiff's malicious prosecution tort claim under state law as time-barred by the one-year statute of limitations under Texas Civil Practice & Remedies Code § 16.002(a); (2) Plaintiff's freestanding malicious prosecution claim under § 1983; (3) any state-law claim of conspiracy to maliciously prosecute because of Plaintiff's failure to plead the predicate tort; and,(4) any claim of *respondeat superior* under § 1983 against Memorial Hermann because there must be personal involvement of a defendant under the statute. It also dismissed without prejudice for failure to state plausible claims with sufficient factual support for each of the elements of (1) false arrest under § 1983 and state law; (2) conspiracy to falsely arrest under state law and under § 1983; (3) negligent failure to train and/or supervise under state law; and (4) *respondeat superior* liability under state law against Memorial Hermann for Officer Gonzalez's actions, if he was acting in his capacity not as a

_____

("Vitale"). At all relevant times Rincon, Martin-Schultz, Kyle, and Vitale were employees of Memorial Hermann, while Hartzog, Priggett, and Franklin were security guards at or available to the Memorial Hermann Southwest Wellness Center ("Wellness Center") at 7731 Southwest Freeway, Houston, Texas 77072.

policeman, but as a security guard/employee.  The Court granted
Plaintiff leave to replead these latter claims, if she is able, by
filing an amended complaint within twenty days of entry of the
Opinion and Order.  Plaintiff filed her First Amended Complaint on
July 8, 2013.

### I.  Allegations of the First Amended Complaint (#32)

Goodarzi's First Amended Complaint is very similar to her
earlier one.  Goodarzi, a naturalized United States citizen of
Iranian/Persian descent, alleges that on September 27, 2009 she
brought her infirm mother to the Memorial Hermann Southwest
Wellness Center, where her mother had an appointment for surgery.
Defendant employees Rincon, Martin-Schultz, Kyle, and/or Vitale
chastised and verbally abused Goodarzi because she had missed her
mother's scheduled appointment.  Goodarzi voluntarily left to get
care elsewhere.  Goodarzi alleges that maliciously and in
retaliation against her for having been rude to them, and even
though Goodarzi had not committed any crime, these Defendants,
individually and/or acting in concert, called security to have
Plaintiff arrested by one of the police officers regularly in the
employ of Memorial Hermann and working outside with its security
staff.  Goodarzi claims that Defendants knew "from experience" that
at Memorial Hermann it was "a matter of custom and practice, and
based on previous calls they had made to security which resulted in
an arrest," none of which are delineated, that the police officer

on duty would make arrests under color of law at the request of hospital security.

After leaving the Wellness Center, in the parking lot Goodarzi was accosted by security-guard Defendants Hartzog, Priggett, and Franklin, who attempted to detain her until the arrival of the police officer working on that date. Goodarzi claims that all the police officers retained by Memorial Hermann were trained or supervised by Memorial Hermann to exercise police power at the direction of its security guards, regardless of whether the particular police officer personally investigated or determined that exercising such police power was lawful or justified under the circumstances.

Defendant R. Gonzalez ("Gonzalez"), a City of Houston Police Officer, was the officer who arrived that day. Goodarzi asserts that Gonzalez did not investigate or determine whether there was lawful cause to seize or arrest her, nor did he personally observe Goodarzi commit any arrestable offense. Only because Hartzog, Priggett and/or Franklin requested that he arrest her did Gonzalez attempt to seize her, initially by commanding her to stop walking to her car. Goodarzi maintains that she reasonably thought Gonzalez was a security guard because he was in the company of the others and did not identify himself as a police officer and because she had committed no offense, she did not obey his command to stop. She further asserts, "Drawing inferences from incident reports

-4-

extant, as well as from her personal knowledge and physical evidence--Defendant Priggett's ID tag was recovered from inside of Plaintiff's car--Plaintiff reasonably infers and pleads that Hartzog, Priggett and/or Franklin and Detective Gonzalez, *all* placed hands upon the Plaintiff and on her mother, striking at them in the process, in order to  physically detain Plaintiff and her mother, whereupon Plaintiff ultimately was dragged physically from her car." #32 at p. 7.  Hartzog admits that he reached into Goodarzi's car to grab the keys and physically prevent her from driving away.  The complaint asserts that Gonzalez, "assisted" by the Security Guard Defendants, then took Plaintiff into custody, handcuffed her, formally placed her under arrest, and told the officers who next took custody of her that she should be charged with resisting arrest, even though Gonzalez knew that Goodarzi had not resisted arrest and that he had been asked by Herzog, Priggett and/or Franklin to arrest her to "'cover' and insulate" them all from liability.  #32 at p. 8.  Goodarzi further alleges that only after handcuffing her did Gonzalez identify himself as a Houston police officer.  His "lie" that she resisted arrest furthered Gonzalez's conspiracy with Hertzog, Priggett and/or Franklin to seize and arrest Plaintiff, and it also reflected his understanding that he was employed by Memorial Hermann to seize and arrest individuals when security requested such, regardless of whether there was an independent observation or verification of lawful

cause to do so.  His lie additionally furthered "the tacit, circumstantial agreement and conspiracy, of which Defendants Rincon, Martin-Schultz, Kyle, and Vitale were a part, creating the expectation by those defendants that calls to security would result in an arrest by the police officer retained to 'assist' hospital security." #32 at p. 8.

Plaintiff complains that she was prosecuted for resisting arrest under Case No. 1709595 in the Harris County Criminal Court at Law No. 6, had to retain counsel and make numerous court appearances, and suffered anxiety because of the prosecution.  The case against her was dismissed on May 23, 2011.

Goodarzi's first cause of action is against Gonzalez under 42 U.S.C. § 1983 for unlawful and malicious seizure and arrest in violation of the Fourth Amendment and of due process under the Fifth and Fourteenth Amendment.  She seeks compensatory and punitive damages and an award of reasonable costs and attorney's fees under 42 U.S.C. § 1988.  She pursues the same cause of action against co-conspirators Rincon, Martin-Schultz, Kyle and Vitale, who expected from experience, custom, and practice that a retaliatory call to hospital security requesting that Plaintiff would be seized and arrested in violation of her civil rights would result in such an unlawful action.  She brings the same cause of action against co-conspirators Hartzog, Priggett and Franklin, or alternatively asserts that they assisted Gonzalez in a joint action

to violate Plaintiff's civil rights.

Goodarzi's second cause of action for state-law false arrest is asserted against Rincon, Martin-Schultz, Kyle, Vitale, Hartzog, Priggett and Franklin.  She again seeks compensatory and punitive damages against them individually and jointly and severally, and an award of reasonable costs and attorney's fees.

Third, Goodarzi sues Memorial Hermann for negligent failure to train or supervise their retained police officers and security guards because it had a duty to do so to avoid the foreseeable unlawful arrests of members of the public without probable cause.

Goodarzi's fourth cause of action is for *respondeat superior* under state law against Memorial Hermann because it is liable for all injuries and damages caused by the negligence, recklessness and intentional acts of all the Defendants, who were allegedly acting as agents, servants or employees of Memorial Hermann in furtherance of its business affairs.

Plaintiff's amended complaint does not assert any claims against John Does 1-10, nor were they identified or served.

## II.  Standards of Review

The Court refers the parties to its Opinion and Order of June 14, 2013 (#31) for the standard of review under Federal Rules of Civil Procedure 8 and 12(b)(6).

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most

favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial.  *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712

(5th Cir. 1994).   "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323.   The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).   Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).   "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'"   *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).   "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"   *Id., quoting Liberty Lobby*, 477 U.S. at 252.   The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'"   *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).   "If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

**III.  Memorial Hermann Defendants' Motion to Dismiss (#34)**

**A.  Relevant Law**

The Court refers the parties to its discussion of the relevant law in its earlier Opinion and Order (#31).

**B.  Memorial Defendants' Motion**

Memorial Hermann Defendants assert that the new complaint simply rewords and adds legal conclusions to the previously dismissed allegations and that Goodarzi still fails to allege "sufficient facts above the speculative level"[2] to state plausible claims.[3] Specifically, they first assert that (1) Goodarzi failed

---

[2] *Iqbal*, 556 U.S. at 678.

[3] The Supreme Court has opined that a claim is plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the claim is based solely on legal conclusions or a "formulaic recitation of the elements of a cause of action,"

to plead facts to show that Memorial Hermann Defendants plausibly

were state actors[4] acting "under color of law" by adequately

_____

plausibility will not be found.  *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007).  Nor will plausibility be found where the
complaint "pleads facts that are merely consistent with a
defendant's liability" but "stops short of the line between
possibility and plausibility of entitlement to relief" or where the
complaint is made up of "naked assertions devoid of further factual
enhancement."  *Id*. at 557, *cited in Iqbal*, 555 U.S. at 677.

    [4] In its earlier Opinion and Order, the Court wrote in part,
#31 at pp. 60-61,

        An off-duty policeman working a second job as a security
    guard has been found by one court to be a "state actor" for
    purposes of § 1983 liability because he was hired because of
    his ability to use his police association as a weapon against
    trouble at the private work site.  *Salazar v. Luty*, 761 F.
    Supp. 2d 45, 47 (S.D. Tex. 1991).  Private parties can be
    liable under § 1983 if they have conspired with a state
    official and are willful participants in joint activity with
    that state official.  *Sims v. Jefferson Downs Racing Ass'n,
    Inc.*, 778 F.2d 1068, 1076 (5th Cir. 1985).  Where a claimant,
    in asserting a § 1983 claim based on false arrest, must meet
    the state action requirement to sue private parties who
    requested that police arrest someone, as is the case here, the
    Fifth Circuit has opined,

        The execution by a private party of a sworn
        complaint, which forms the basis for an
        arrest, is, without more, not sufficient to
        make that party's acts state action.  The
        plaintiff must show that the police in
        effecting the arrest, acted in accordance with
        a "preconceived plan" to arrest a person
        merely because he was designated for arrest by
        the private party without independent
        investigation. . . .  The action by the police
        constitutes an "abdication of state authority"
        to a private party that is sufficient to cause
        the private party's acts to become state
        action. . . .

    *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d at
    1078-79)(finding that plaintiff did not allege a

-11-

describing how they either had a preconceived plan or conspired

with Gonzalez[5]; (2) Goodarzi failed to plead specific facts showing

---

preconceived plan between Jefferson Downs and the Kenner police nor show that the arresting officer did not make an independent determination whether there was cause to arrest).  *See also Glotfelty v. Karas*, No. 12-30532, 2013 WL 600253, *4 (5th Cir. Feb. 15, 2013)("[W]here the plaintiff claims that a private party acted under color of law as part of a conspiracy to effect an unlawful arrest, we consistently have held that he must demonstrate the existence of a 'preconceived plan' for the authorities to arrest the person without investigation, 'merely because he was designated for arrest by a private party.'"), *citing Sims*, 778 F.2d at 1079; *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*,673 F.2d 771, 772 (5th Cir. 1982)(a plaintiff must prove a "'customary' or 'pre-existing' arrangement between" the private party and the police to detain suspected shoplifters); *Smith v. Brookshire Bros.*, 519 F.2d 93, 94 (5th Cir. 1975)(a plaintiff must show that the private party had a 'customary plan' by which the police would effect detentions like the one then at issue), *cert. denied*, 424 U.S. 915 (1976).  Plaintiff has not alleged the existence of a preconceived plan, with supporting factual detail to state a plausible claim, nor has she alleged facts to support the elements of a conspiracy between Officer Gonzalez and the Memorial Hermann Defendants, indeed as to each individual who was involved.

[5] For example, citing to the Court's previous Opinion and Order (331 at pp. 61-61), Defendants maintain that Goodarzi's claim that from previous calls they had made to security that resulted in an arrest (with not a single example described), the Office Staff had "expectations that a call to hospital security to complain about Plaintiff and to request that she be seized would proximately and [foreseeably] result in Plaintiff's seizure" is conclusory, untrue, unsupported by facts, and insufficient to show a conspiracy with state officials or any actual preconceived plan .  The blanket and conclusory statements  that Office Staff's alleged phone call to the Security Staff and their "expectations" are inadequate to support a charge of conspiracy.  The same is true of the similar allegations against the Security Staff.   Goodarzi's pleadings consist of conclusions, labels, and formulaic recitation of the elements of a cause of action which "will not do" under *Twombly*,

that Gonzalez lacked authority to arrest her or that each individual Memorial Hermann Defendant was liable for instigating her arrest; (3) Goodarzi again failed to plead facts showing Memorial Hospital's negligence (a claim she had previously abandoned), the foreseeability of the purported false arrest, or that it was the proximate cause of the alleged harm[6]; and (4) because all of Goodarzi's claims against individual Memorial Hermann Defendants fail and because Gonzalez's liability ("under

---

550 U.S. at 555-56.

[6] As the Court noted in #31 at p. 64, and as is again the case in the Amended Complaint, Plaintiff has not pleaded facts showing how Memorial Hermann was negligent in training and supervising the employees, nor how her alleged false arrest was foreseeable, nor how the arrest was proximately caused by the alleged negligence. Moreover, Memorial Hermann Defendants point out that to state a claim for negligent hiring or supervision a plaintiff must allege facts showing not only that the employer was negligent in hiring and supervising its employees, but also that the employee foreseeably "committed an actionable tort against the plaintiff." While the Amended Complaint conclusorily claims that tort was false arrest, as will be discussed Goodarzi fails to state a plausible claim for false arrest and therefore the negligence claim must also be dismissed. *Wansey v. Hole*, 379 S.W. 3d 246, 247 (Tex. 2012). Moreover Memorial Hermann Defendants highlight that Plaintiff alleges that the HPD Officers working shifts at the facility "were trained, instructed and/or supervised by the Hospital to defer to the judgment of Hospital security in determining when police action should be taken . . . [and] to abdicate their own lawful obligations to make independent investigations and determinations about whether lawful cause existed prior to taking police actions." Am. Complaint, ¶¶ 74-75. Defendants respond, #34 at p. 19, "In other words, Plaintiff alleges that Memorial Hermann affirmatively instructed or trained its officers to violate Texas law, the Constitution, and their obligations as police officers. This claim is implausible, untrue, and entirely unsupported by any specific alleged facts that would show this to be the case." The Court concurs that without factual support this is not a plausible claim sufficient to pass muster under Rule 12(b)(1), *Twombly*, and *Iqbal*.

color of law") cannot extend to Memorial Hermann, Goodarzi's *respondeat superior* claim fails.   Furthermore, in her amended complaint Plaintiff not only fails to plead facts to show color of law, false arrest, negligent failure to supervise and respondeat superior, but she adds only legal conclusions.   In sum, Defendants urge that the entire suit against them must be dismissed with prejudice.

Moreover, the Amended complaint fails to state a plausible false arrest claim:   she fails to plead facts showing why no probable cause existed for her arrest after Goodarzi ignored Officer Gonzalez's command to stop, nor why liability should extend to any Memorial Hermann Defendants, while she mischaracterizes the content of the HPD report, and her Amended Complaint's allegations of false arrest are conclusory and implausible.   Whether the purported initial arrest (allegedly for the disturbance in the Wellness Center) was lawful is irrelevant to her resisting arrest offense, which is the charge found in the information and criminal complaint (#34, Exs. B and C) against Goodarzi and the HPD report. *See* #34, Ex. A at 2.008 referenced in the Amended Complaint ("Off R. Gonzalez began to give the suspect a lawful order to turn off her vehicle and exit her vehicle" but she "began kicking with the bottom of her feet striking [Gonzalez] two times in the abdomen/stomach area" and Plaintiff "stated she saw that Off R. Gonzalez was a Houston Police Officer").   #31 at p. 53.   Plaintiff

-14-

does not show how her arrest by the Houston Police Officer was without authority of law, i.e., that there was no legal authority or justification for the arrest or detention.  Plaintiff's Amended Complaint states, and the HPD report corroborates, that Gonzalez first ordered Plaintiff to stop walking to her car.  Am. Complaint at ¶ 25; #34, Ex. A at 2.007-08 (after Plaintiff cursed and made an offensive gesture to Gonzalez and the Security Staff, Gonzalez "then instructed the suspect to stop walking away and was going to [give her] a Class C citation/offensive gesture ticket").  A physical altercation and her arrest resulted.  Gonzalez had authority to arrest Goodarzi without a warrant for any offense committed in his presence or view under Article 14.01(b) of the Texas Code of Criminal Procedure.  Plaintiff does not state that Gonzalez was not dressed in his usual police uniform, and Gonzales and the HPD report, thus uncontroverted, represent that he was. Moreover Defendants point to *Howard v. State*, No. 04-99-00600-CR, 2000 WL 1585622, at *1 (Tex. App.--San Antonio Oct. 25, 2000)(Texas Penal Code Ann. § 38.03(b) "makes it clear that the unlawfulness of the arrest is no defense to the charge of resisting arrest. . . . Because a person may not lawfully resist an unlawful arrest, it follows that citizens many not assault a law enforcement officer who is attempting to commit an unlawful arrest."), pet. for discretionary review ref'd (Apr. 11, 2001).  Despite the facts demonstrating the existence of probable cause for Goodarzi's

-15-

arrest, she claims that her "seizure and arrest were without probable cause" and that the charges were "fabricated."  Am. Complaint at ¶¶ 69, 52.

Plaintiff does not allege a state-law false arrest claim against Gonzalez, but only against the Memorial Hermann Defendants, but she fails to plead why liability should extend to them.  Where a person does not personally participate in the detention, that person can only be liable if he directs or requests the arrest. #31 at p. 17 (citing Texas cases).  She lumps Defendants together and alleges that Memorial Hermann Defendants instigated her arrest by "importuning" Officer Gonzalez to arrest Goodarzi.  Am. Complaint at ¶¶ 17, 22, 25, 35, 69, 77.  To state, no less prove, such a claim, Plaintiff must allege facts showing that **_each defendant_** clearly directed or requested that Goodarzi be arrested. Just as she failed to allege each Defendant's individual behavior contributed to the detention, she fails to specify the role of each in instigating the arrest.

Last, Goodarzi's _respondeat superior_ claim must be dismissed because she has failed to plead a requisite underlying claim and because Memorial Hermann Health System is not vicariously responsible for the actions of either Officer Gonzalez or individual Memorial Hermann Hospital Defendants. As stated in #31, a _respondeat superior_ claim against Gonzalez is not cognizable under § 1983. _Monell v. Dept. of Social Serv._, 436 U.S. 658

-16-

(1978); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)(and cases cited therein); *Meade v. Dillard Dept. Stores*, 275 F.3d 43 (Table), No. 00-51223, 2001 WL 1223752, *3 n.3 (5th Cir. Oct. 4, 2001). Furthermore, since all claims against the individual defendants here must be dismissed for failure to state a claim under Rule 12(b)(6), there can be no *respondeat superior* liability under state law. *Knutson v. Morton Foods, Inc.*, 580 S.W. 2d 876, 877 (Tex. Civ. App.--Texarkana 1979), *aff'd*, 603 S.W. 2d 805 (Tex. 1980)(holding that once employee's primary liability no longer exists, neither does employer's derivative liability).

## C. Plaintiff's Response (#36)

Plaintiff argues that she has pleaded that she did not know Gonzalez was a police officer when she did not obey his command to stop. Even if the Court considers the newly proffered evidence (the police report, Ex. A to #34), which is outside of the First Amended Complaint, she disagrees that it supports a finding of probable cause as a matter of law. She questions its authenticity and Defendants' failure to aver that this document was unavailable to them for their first motion to dismiss, so it is thus a "successive motion" barred by Federal Rule of Civil Procedure 12(g)(2)("Except as provided in rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). *Stoffels ex rel. SBC*

*Concession Plan v. SBC Communications, Inc.*, 430 F. Supp. 2d 642, 647-48 (W.D. Tex. 2006)("'The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.'"), citing 5C Wright & Miller, *Fed. Prac. & Proc.* § 1388.  The police report proffer is not a public document, as indicated by the word "non-public" on its face. Plaintiff states that she did not make reference to the document in her Complaint of First Amended Complaint.

If the Court considers the document, Goodarzi points out that it is not a contemporaneous report of events occurring at the time of the arrest, but "an account concocted after the fact, self-serving and essentially comprised of hearsay."  #36 at p. 5. Regardless, she claims that the content is "consistent with the scenario pleaded by Plaintiff."  *Id.*  Goodarzi charges that "to justify the arrest" afterwards, Gonzales "was compelled to manufacture a charge of resisting arrest." *Id.* at p.6.  She claims that Section 42.01(a)(1) of the Texas Penal Code "has long been held to proscribe only acts or speech which may be construed as 'fighting words,' speech or gestures which themselves create a risk of inciting or provoking violence." *Id.*  Goodarzi argues that actual or threatened violence is an essential element of breach of the peace; merely being offensive does not lawfully subject a citizen to being deprived of her Fourth Amendment rights. *Miles v.*

-18-

*State*, 241 S.W. 3d 28, 40 (Tex. Crim. App. 2007).  She was not cited for disorderly conduct or breach of the peace.  The police report is simply a "continuation of the agreement reached between Defendant Gonzalez and the Defendant security guards to *arrest first and justify the arrest afterwards*, no matter how ludicrous the attempted justification may be."  #36 at p.8.

Regarding her joint action theory, Goodarzi insists that she has adequately pleaded that "Defendant security guards insinuated themselves into a law enforcement role by virtue of their physical actions; *working with* Defendant Gonzalez to physically drag Plaintiff from her car."  #36 at p. 9.  The security guard Defendants were "willing participant[s] in joint action with the State or its agents."  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  Goodarzi insists that she had adequately pleaded that her arrest by Gonzalez was based on a "designation of suspicion" by the Defendant security guards, that there was no independent investigation by Gonzalez, and that the pleading resulted from the custom and practice between the security guards and the police officer(s) on staff.  She contends that she is "entitled to discover the history of the interaction between hospital security and the hired gun(s), (retained police officers), on staff" and that "[l]ogically these *proofs* would redound to the intentions and expectations" of the Defendant Office Staff, too.  *Id*. at p.10.

Goodarzi states that she is not reviving her negligent

-19-

training or supervision claim, although the Amended Complaint clearly sets it out as a separate cause of action (#32 at pp. 15-17).   Rather she states that she is pleading facts showing Defendants' expectations and supporting the "inference . . . that there was a conspiracy, based on *custom and practice*, to secure Plaintiff's warrantless, unlawful arrest."

Similarly her claims for false arrest are based on the same facts, i.e., that "Memorial Hermann Defendants had a legitimate expectation, based on custom and practice, that a call to security proximately and foreseeably would result in Plaintiff's arrest, even without the proffer of lawful probable cause." #36 at p. 11. She insists that "the absence of any criminal charge against Plaintiff based on events inside the office make her pleading sufficient that the arrest was importuned maliciously, and that any reasons which may have been given, *which Plaintiff cannot know without discovery*, were concocted." *Id.*

Finally, clearly if she sustains her claims against the Memorial Hermann staff for tortious conduct, she can proceed against Memorial Hermann under *respondeat superior*.   To prove Gonzalez was a Memorial Hermann employee, she will need discovery of the contracts and operating documents at the Hospital and the Houston Police Department about their arrangement.

**D.   Memorial Hermann Defendants' Reply (#38)**

Defendants reiterate (1) Plaintiff still fails to plead

-20-

specific, plausible facts supporting a conspiracy of a preconceived plan between themselves and Officer Gonzalez to support extension of § 1983 liability to them; (2) Plaintiff has added facts in the First Amended Complaint that include misleading references to a police report; (3) Plaintiff fails to state a plausible claim that Officer Gonzalez lacked authority to arrest; and (4) Plaintiff provides no additional support for any of her other claims. She still makes blanket allegations of conspiracy, with no specific pleaded facts as to the meeting of minds, agreement, and affirmative acts for each civilian Defendant, and no plausible details to support her conclusory claim of a preconceived plan.

As for Goodarzi's discovery-first, specifics-later argument, the Supreme Court sought to discourage such scenario in *Twombly*. Defendants note that this Court follows others in this circuit in dismissing vague claims of conspiracy without factual support. #31 at pp. 62-63. This Court observes that in *Iqbal*, the Supreme Court stated that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678.

Similarly Plaintiff has failed to plead sufficient facts to state a plausible claim that each Memorial Hermann Defendant participated in Officer Gonzalez's arrest of Plaintiff. The conclusory claims against the Office Staff Defendants were not bolstered by Plaintiff's that there was "an unbroken chain of

events" from what happened inside the Wellness Center to her arrest
in the parking lot.  The absence of a criminal charge for events
occurring in the office does not support or make plausible her
claim of malicious fabrication by Gonzalez of a lawful arrest.  Her
allegation of a plot to provide fraudulent reasons for Plaintiff's
arrest fail to satisfy the particularity requirements of  Rule
9(b).[7]

As for the Security Staff Defendants, as discussed Plaintiff
mischaracterizes the incident report's statement of Defendants'
involvement and presumes that one Defendant's action should apply
to the other two.  Because Plaintiff used the HPD Report in
amending her claims and because the Amended Complaint refers to it

---

[7]     Federal Rule of Civil Procedure 9(b) provides,

In all averments of fraud or mistake, the circumstances
constituting fraud or mistake shall be stated with
particularity.  Malice, intent, knowledge, and other
condition of mind of a person must be averred generally.

"In every case based upon fraud, Rule 9(b) requires the
plaintiff to allege as to each individual defendant 'the nature of
the fraud, some details, a brief sketch of how the fraudulent
scheme operated, when and where it occurred, and the participants,"
i.e., "the who, what, when, where, and how."  *Hernandez v. Ciba-
Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001).  The Fifth
Circuit interprets Rule 9(b) strictly and requires a plaintiff to
specify the allegedly fraudulent statements, identify the speaker,
the time and where the statements were made, and explain why they
were fraudulent.  *Flaherty & Crumrine Preferred Income Fund, Inc.
v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009); *Benchmark Elecs.,
Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).  Where
the complaint alleged fraud, defendants may not be lumped together;
the complaint must plead facts satisfying Rule 9(b) as to every
defendant.  *Southland Sec. Corp. v. INSpire Ins. Solutions,* nc.,
365 F.3d 353, 365 (5th Cir. 2004).

and quotes from it the word, "assisted," it is central to the claims and the Court may consider it in assessing Defendants' motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("[B]ecause tje defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss,"), *citing Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  The Court agrees.

E.   **Court's Decision**

Because after reviewing the applicable law, the Amended Complaint, and the briefing, the Court agrees with reasons put forth by the Memorial Hermann Defendants that Goodarzi fails to state a claim for which relief may be granted under Rules 9(b) and 12(b)(6), the Court grants their motion to dismiss (#34).

**IV.  Officer Gonzalez's Motion for Summary Judgment (#37)**

In response to Plaintiff's charge that Gonzalez violated her rights to be free from unreasonable seizures under the Fourth and Fourteenth Amendments and § 1983 on September 27, 2009 when he arrested her, Gonzales moves for summary judgment on the ground that he is entitled to qualified immunity.

A.   **Relevant Law Regarding Qualified Immunity**

Qualified immunity, an affirmative defense to a claim under 42

U.S.C. § 1983, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009). Thus the Court examines whether the "officer's conduct violated a constitutional right," as well as "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Either prong may be addressed first. *Pearson*, 129 S. Ct. at 808. A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted). *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions."). To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The 'clearly

-24-

established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Id.* at 350, *quoting Anderson*, 483 U.S. at 640. "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012). Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*).

Although qualified immunity is an affirmative defense,

-25-

"plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To meet this burden the plaintiff must allege facts showing that the defendant committed a constitutional violation under the current law and that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the Fifth Circuit held that when a defendant-official raises a qualified immunity defense in his individual capacity, a heightened pleading standard must be met by Plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense.

## B.  Gonzalez's Motion

Officer Gonzalez claims he is entitled to qualified immunity because the undisputed evidence in the record demonstrates that his actions were objectively reasonable in light of the clearly established law.

To prevail on Plaintiff's § 1983 claim, Goodarzi must show that Gonzalez lacked probable cause to arrest her.  *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004).  "Probable cause exists 'when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient

-26-

for a reasonable person to conclude that the suspect had committed or was committing an offense.'"  *Id., quoting Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).  Gonzalez argues that even in a light most favorable to Plaintiff, the undisputed evidence in the record here establishes that he had probable cause to arrest Goodarzi on September 27, 2009.

With his supporting affidavit (#37, Ex. A) and citing to Plaintiff's allegations in the Amended Complaint that are in accord, Gonzalez, who had been a Houston Police Department Officer for approximately ten years, states that on the date of the arrest he was working an extra-employment job at Southwest Memorial Hospital (as he had done for approximately seven years) and wearing his standard Houston Police Department uniform (dark blue pants, medium blue shirt with a badge, name plate, and patches clearly identifying him as an employee of the Houston Police Department, and a duty belt holding a Taser, an expandable baton, handcuffs, and similar items), when at approximately 11:07 a.m. the hospital's Security informed him that there was a disturbance at the Wellness Center and gave him a description of the suspected woman and her attire.  When he arrived at the location about a minute later, he saw Hartzog, Priggett, and Franklin in their hospital security officer uniforms (khaki shirt and khaki pants with patches clearly identifying their employer as Memorial Hermann).  Gonzalez met Goodarzi, who matched the general description that he had been

-27-

given, as she was exiting the Wellness Center.  He stopped her in the parking lot to allow the security officers time to obtain more information from the Wellness Center employees.  Plaintiff stopped and told him she was not causing the disturbance and that the Wellness Center staff had cursed at her.    At this point, the security officers returned and reported that Plaintiff had used abusive language toward the Wellness Center employees and that they were offended.  Goodarzi began walking away.  Gonzales ordered her to stop.  She continued to walk away with her back turned toward Gonzalez and the security officers and "made an obscene gesture by raising her hand and flipping her middle finger in their direction."  #37 at p.4, citing Ex. A.

The Court points out that in Goodarzi's response (#41 at p. 4, ¶9), she states, "When the men persisted in interrupting her [phone call to her sister to discuss treatment options for her mother]--to repeat their instructions to return inside--out of frustration, Plaintiff gestured over her shoulder to them; (Plaintiff does not admit, but cannot entirely dispute that she may have displayed her 'middle finger')."

Gonzalez represents that he then asked Hartzog, Priggett, and Franklin if they were offended by her gesture and they answered, "Yes."  Gonzalez again ordered her to stop, but she did not comply.  Gonzalez decided to issue Plaintiff a citation for disorderly conduct in violation of § 42.01(a)(2) of the Texas Penal Code ("A

person commits an offense if he intentionally or knowingly . . . makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace.").  Gonzales told her that he was going to issue her a citation for the offensive gesture and ordered her to present identification.  She refused and said she did not have to give him her identification.  Plaintiff, the three security guards, and Gonzales then reached Plaintiff's car and Goodarzi got into her vehicle and started the ignition.  Gonzalez ordered her to turn it off and get out of the vehicle.  When she did not, Gonzalez reached in and attempted to pull Plaintiff out of the car, and ultimately pulled Plaintiff ("physically dragged" and "used a choke hold," according to Plaintiff) out of the car while she continued to resist and fight him.  Gonzalez states that he had to hold her against the car to handcuff her.  He asked Hartzog to help him get the handcuffs on, and Hartzog did so.

Gonzalez then called another police officer to transport Plaintiff to jail, and he talked to the Assistant District Attorney via cell phone to support charges against Goodarzi for resisting arrest.  He also completed the certified Houston Police Department Incident Report 137777410 (copy attached to his affidavit, Ex. A). He asserts, "At no time did he use an amount of force beyond what was reasonably necessary to protect himself and others, to bring the incident under control, and to effect an arrest."  #37 at p. 5.

Gonzalez points out that an individual who refuses to obey the directives of a peace officer in conduct other than speech is interfering with public duties in violation of § 3815(a)(1) of the Texas Penal Code ("A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."). *See also Key v. State*, 88 S.W. 3d 672, 676 (Tex. App.--Tyler 2002, pet. ref'd)(sufficient evidence at trial established that Key engaged in conduct other than speech in refusing to obey the repeated directives of a police officer to stay on the sidewalk while the officer spoke to others on the scene); *Berrett v. State*, 152 S.W. 3d 600, 604-05 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd)(holding that Berrett's conduct of repeatedly pulling away from the officer and filming his encounter in a way to interfere with the arrest violated § 3815(a)(1)). Because, in compliance with Article 2.13(a) and (b)(4) of the Texas Code of Criminal Procedure ("It is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means . . . .(b) The Officer shall . . . (4) arrest offenders without warrant in every case where the officer is authorized by law, in order that they may be taken before the proper magistrate or court and be tried."), Gonzalez (1) attempted to investigate the events that took place before he

-30-

arrived at the Wellness Center, (2) because Plaintiff did not comply with his orders, (3) because Plaintiff's conduct was more than speech and interfered with Gonzalez's duty to investigate the complaint against her and to issue her a citation for conduct committed in his presence, there is sufficient evidence as a matter of law that he had probable cause to arrest her.

Goodarzi's conduct also violated § 38.04(a) of the Texas Penal Code ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him.") because she intentionally fled from Gonzalez, who was wearing his Houston Police Department uniform and was trying to issue her a citation. *See also Nnabuihe v. State*, No. 05-99-013240CR, 2000 WL 1048536, at *2 (Tex. App.--Dallas July 31, 2002)("The evidence supports the reasonable conclusion that appellant knew Grimes was a police officer [from his police uniform], Grimes was attempting to detain appellant to issue a ticket, and appellant fled from Grimes to evade detention.").

In addition, because Goodarzi did not comply with his orders to stop, provide him with her identification, and exit the vehicle, because she kicked and scratched him when he pulled her from the car, and because he required Hartzog's assistance in handcuffing the violent and uncooperative Plaintiff, Gonzalez asserts that Goodarzi committed the offense of resisting arrest under Texas

Penal Code Ann. § 38.03, which provides in relevant part,

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

> (b) It is not a defense to prosecution under this section that the arrest or search was unlawful.

*See also Burke v. State*, 692 S.W. 2d 570, 571 (Tex. App.--Houston [14th Dist.] 1985)(holding that there was sufficient evidence for the judge to conclude that Burke resisted arrest when he failed to exit his vehicle as ordered by the police officer, when he struggled with the officer after exiting, and when assistance from several other officers was required to subdue and handcuff him). As this Court noted in its previous Opinion and Order (#31 at pp. 20-21), "In deciding whether probable cause exists, police officers are not required to be perfect, nor do they have to err on the side of caution "out of fear of being sued." *Id. citing Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992). This Court further opined, "A claim for false arrest does not depend upon the validity of each individual charge, but on the validity of the arrest as a whole; if there is probable cause for any of the charges made, the arrest is supported by probable cause and the claim for false arrest fails." *Id.* at 21, *citing Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

Thus even if he was wrong in detaining Goodarzi to issue her

a citation, he would still be entitled to qualified immunity.

### Goodarzi's Response (#43)

Goodarzi's response fails to show Gonzalez is not entitled to his affirmative defense.  She attaches to her response her own affidavit and that of her attorney, Hillary D. Unger.  The latter merely states that it "is her belief and understanding that Plaintiff was never charge [*sic*], cited, or prosecuted for any offense grounded in the uttering of an obscenity, either by word or gesture."  The Court observes that no party claims she was.[8]

Goodarzi's response and affidavit are irrelevant to Gonzalez's qualified immunity defense because they apply the wrong standard in assessing everything that occurred from her own point of view rather than from the "viewpoint of a reasonable official in light of the information available to him and clearly established at the time of defendant's actions."  Gonzalez correctly observes that it does not matter whether Goodarzi knew or believed that Gonzalez in his police uniform was a police officer; what matters is whether a

---

[8] Gonzalez points out that Unger attaches a copy of the Houston Police Department Report (see page 23 of this Opinion and Order) and that the report contradicts some of Goodarzi's allegations.  For example, regarding Goodarzi's insistence here there is no competent evidence in the record from which the Court can determine whether any actionable conduct occurred inside the Wellness Center, the report (#43-1 at p. 4) indicates that Gonzalez was responding to a disturbance and that he met the suspect on scene.  The report at pp. 5-7 summarizes the statements of the Office Staff as witnesses in the Wellness Center that a woman matching Goodarzi's description caused the disturbance and they relayed that message to security.

reasonable officer would believe that Plaintiff knew he was a police officer and whether the belief was reasonable. *Haggerty*, 391 F.3d at 656. As Gonzalez observes, for example, her contention that she was not paying attention to Gonzalez's police uniform is irrelevant; a reasonable person who is not blind would think he was a police officer from his uniform. Moreover Texas Penal Code § 22.02(c) regarding the offense of assault states, "The actor is presumed to have known the person assaulted was a public servant or a security officer if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant or status as a security officer."

## Court's Decision

The Court concludes that Plaintiff has failed to satisfy her burden to show that Gonzalez is not entitled to qualified immunity. In turn, Gonzalez has demonstrated that he is entitled to qualified immunity and to summary judgment on Goodarzi's claims against him.

Goodarzi has established from the facts within his knowledge on which he reasonably relied and what occurred within his presence that he had probable cause to believe Goodarzi was committing an offense and to arrest Goodarzi, who intentionally impeded him from detaining her and effecting her arrest by refusing his commands to stop and to provide identification and by violent physical resistence; he also demonstrated his right to act as he did under the law. *Haggerty*, 391 F.3d at 656.

-34-

### ORDER

For the reasons stated above, the Court

ORDERS that the Memorial Hermann Defendants' motion to dismiss Plaintiff's First Amended Complaint (instrument #34) for failure to state a claim under Rules 12(b)(6) and 9(b) is GRANTED.  The Court further

ORDERS that Defendant Officer R. Gonzalez's motion for summary judgment (#37) is GRANTED.  A final judgment will issue by separate document.

**SIGNED** at Houston, Texas, this 21st day of February, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-35-